IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:10-CV-89-BO

| | |
|---|---|
| JERRY WAYNE EDWARDS,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    **ORDER** |
| | ) |
| PCS PHOSPHATE COMPANY, INC.,<br>    Defendant. | )<br>) |

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on May 27, 2011 [DE 20]. Plaintiff filed a Response to the Motion on June 17, 2011 [DE 24] and Defendant filed a Reply on July 1, 2011 [DE 26]. Because genuine issues of material fact exist on all claims, Defendant's Motion is DENIED.

BACKGROUND

Plaintiff Jerry Wayne Edwards worked for Defendant PCS Phosphate ("PCS") as a welder and mechanic at the company's facility in Aurora, North Carolina, beginning in March 1999. Mr. Edwards was allegedly exposed to asbestos at the PCS plant and was subsequently diagnosed with asbestosis. He filed a workers' compensation claim against PCS as a result of his asbestosis diagnosis in November 2005. PCS denied that claim. On March 5, 2009, Mr. Edwards completed an "Intention of Retirement" form, indicating that he planned to retire on April 1, 2009. The next day, Mr. Edwards' workers' compensation claim went to mediation but did not settle. After the failed settlement attempt, Christopher Toppin, Human Resources Manager for PCS at the Aurora plant, asked Mr. Edwards to take a tour of the plant and point out the areas in which he was exposed to asbestos. Mr. Edwards refused, on the advice of his lawyer, because his worker's compensation case was ongoing. As a result of his refusal, Mr. Toppin

dismissed or suspended Mr. Edwards for insubordination. Although he was later reinstated, Mr. Edwards never returned to work for PCS.

After his retirement from PCS on April 1, 2009, Mr. Edwards worked short-term welding jobs for VIP International, Inc. ("VIP"). His third job for VIP was scheduled to take place at PCS's Aurora facility. After working the first two shifts, PCS discovered that Mr. Edwards was working for VIP and advised VIP that Mr. Edwards could not work at the PCS plant in Aurora. Mr. Edwards has not completed any additional jobs for VIP.

On June 3, 2010, Mr. Edwards filed a Complaint in Beaufort County Superior Court, alleging retaliation in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"). He also asserted claims for wrongful interference with a contract right, wrongful interference with a prospective contract, and blacklisting. PCS timely removed this action to the Eastern District of North Carolina on July 6, 2010, on the basis of diversity jurisdiction. PCS filed a Motion to Dismiss Count One of Plaintiff's Complaint and Mr. Edwards filed a Motion to Remand. Both motions were denied by this Court on October 8, 2010.

PCS filed the instant Motion for Summary Judgment on May 27, 2011 [DE 20]. Mr. Edwards responded on June 17 [DE 24], and PCS replied on July 1 [DE 26].

## DISCUSSION

Federal Rule 56 provides that summary judgment will be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The Court must view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## I. North Carolina's REDA

In order to establish a claim under REDA, N. C. Gen. Stat. § 95-241, a plaintiff must show that: (1) he exercised his right to engage in protected activity, such as filing a workers' compensation claim; (2) he suffered an adverse employment action; and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action. *See Brackett v. SGL Carbon Corp.*, 580 S.E.2d 757, 762 (N.C. Ct. App. 2003). If the plaintiff has established a *prima facie* case of retaliatory termination, the burden shifts to the defendant to show that it "would have taken the same unfavorable action in the absence of the protected activity of the employee." *Wiley v. United Parcel Serv., Inc.*, 594 S.E.2d 809, 811 (N.C. Ct. App. 2004) (quoting N.C. Gen. Stat. § 95-241 (b) (2010)).

PCS moves for summary judgment on three grounds. First, PCS claims that Mr. Edwards was not an "employee" within the terms of the statute when any alleged retaliatory action took place. Second, it asserts that Mr. Edwards has failed to show a causal connection between any adverse employment action and his prior protected activity. Finally, PCS claims that, even if retaliatory action occurred, PCS would have taken the same action in the absence of protected activity [DE 21].

### A. "Employee" Under REDA

No factual dispute exists as to Mr. Edwards' employment status on November 11, 2009, the approximate date on which PCS informed VIP that Mr. Edwards could not work at its Aurora facility. Both parties concede that, on that date, Mr. Edwards was a former employee of PCS and a current independent contractor of VIP. REDA states that "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith [engages in a protected activity]." N.C. Gen. Stat. § 95-241.

Within the text of REDA, the term "employee" is undefined. The United States Supreme Court confronted a similar ambiguity in interpreting Title VII of the Civil Rights Act of 1964. In *Robinson v. Shell Oil Co.*, the Court held that the statute encompassed former employees within the definition of "employees." 519 U.S. 337, 346 (1997). That statute makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment" who have availed themselves of Title VII's protections." *Id.* at 339. In *Robinson*, a former employee of Shell Oil sought to sue the company for allegedly providing a negative reference to a potential future employer in retaliation for his having filed an EEOC charge. *Id.* at 346. The Court held that the statutory language was ambiguous, looking to the language itself, the specific context in which the language was used, and the broader context of the statute as a whole. *Id.* at 341. Congress had used no temporal qualifier ("current" employees or "former" employees) and remedies provided in the statute included reinstatement for discriminatory discharge, which would necessarily only apply to former employees. *Id.* at 342. Having established that the term "employee" applied to former employees in some sections of the statute, the Court concluded that the term was ambiguous and that "each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Id.* at 343-44. Because discriminatory discharge was among the charges protected from retaliatory action, and because it would be destructive of the antiretaliation provision for an employer to be permitted to retaliate with impunity through discriminatory termination, the Court held that former employees were encompassed in the coverage of "employees" under § 704 (a) of Title VII.

Although the *Robinson* Court was interpreting Title VII, the analysis is instructive here. Like Title VII, North Carolina's REDA provides for relief in the form of reinstatement under N.C. Gen. Stat. § 95-243 (c)(2). Other courts' conclusions that the plain meaning of "employee"

in REDA precludes this interpretation are not controlling and are unpersuasive. *See Merrick v. Charlotte-Mecklenburg Hosp. Auth.*, 582 S.E.2d 726, *2, 3 (N.C. Ct. App. 2003); *Ciancia v. Mission Hosps., Inc.*, No. 1:05CV88, 2005 WL 3546472 at 5 (W.D.N.C. Dec. 28, 2005). Both courts looked to the Workmen's Compensation Act for their definition of "employee" under REDA. This cross-reference, however, is deceptive. The purpose of the Workmen's Compensation Act is to funnel compensation for personal injury or accidental death suits through a unified state-wide program whose provisions are "exclusive of all other rights and remedies of such employee as against his employer, at common law or otherwise." *Tscheiller v. Nat'l Weaving Co.*, 199 S.E.2d 623, 625 (N.C. 1938). In that context, it is entirely appropriate and consistent with the statutory purpose to limit the coverage of the term "employee" to current employees.

In contrast, REDA was enacted to protect individuals from retaliatory actions taken by their employers. *Salter v. E & J Healthcare, Inc.*, 575 S.E.2d 46, 50 (N.C. Ct. App. 2003) Discriminatory discharge is one of the most devastating retaliatory actions an employer can take. Such suits can, necessarily, only be brought by former employees. Surely the legislature did not intend to allow suits by current employees who had been demoted while providing no relief to those whose employers had taken their discriminatory action one step farther. *See id.* ("By enacting REDA...the General Assembly expanded the definition of retaliation to include the "discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment.")

As a federal court entertaining a state law claim, this court must apply the relevant state law as would the highest state court of the state under whose law the suit was brought. *Liberty*

*Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The only state court decision on point is unpublished and inconsistent with the terms and purpose of the statute. Therefore, this Court finds that the Supreme Court of North Carolina would likely include former employees within the scope of REDA's protection, and Mr. Edwards' claim may proceed.

### B. Causal Connection

A genuine issue of material fact remains as to whether there is a causal connection between Mr. Edwards' filing of a Workmen's Compensation claim and PCS's request that VIP not send Mr. Edwards to work at its Aurora facility. Therefore, summary judgment on this claim is inappropriate at this time.

PCS asserts that the alleged retaliatory action was too far removed in time to be considered a result of Mr. Edwards' protected activity [DE 21 at 14]. However, the North Carolina Court of Appeals has held that "requiring a close temporal connection would allow employers to circumvent the statute." *Tarrant v. Freeway Foods of Greensboro, Inc.*, 593 S.E.2d 808, 813 (N.C. Ct. App. 2004). Rather, the major concern is actual causation, not mere proximity in time. *Id.* Here, Mr. Edwards has presented sufficient evidence to survive a motion for summary judgment, namely that he met expectations in his employment reviews, suffered no prior disciplinary action, and yet was placed on PCS's "no rehire list" [DE 25 at 15]. Further, his alleged insubordination occurred in connection with his Workmen's Compensation claim [DE 21-2 at 16]. Temporal proximity is a factor to be weighed along with direct and circumstantial evidence of causation or non-causation presented by the parties. It is not alone dispositive.

### C. Same Action in the Absence of Protected Activity

PCS is correct in asserting that an affirmative defense is available if it can show that it

"would have taken the same unfavorable action in the absence of the protected activity of the employee." *Smith v. Computer Task Grp., Inc.*, 568 F. Supp. 2d 603, 617 (M.D.N.C. 2008) (citing N.C. Gen. Stat. § 95-241 (b)). PCS has asserted that it asked VIP not to send Mr. Edwards because of his insubordination. However, as noted above, his insubordination was, at least potentially, connected to his pursuit of his Workmen's Compensation claim. Therefore, PCS has not met its burden of persuasion under a preponderance standard at this time, and a genuine issue of material fact exists as to the motivation for requesting that he not work at the Aurora plant with VIP. *See Wilkerson v. Pilkington N. Am., Inc.*, 211 F. Supp. 2d 700, 707 n. 4 (M.D.N.C. 2002).

## II. Wrongful Interference With A Contract

Under North Carolina law, in order to make out a *prima facie* case for the tort of wrongful interference with a contract, a plaintiff must show: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988).

The only factual dispute about the elements of this claim is whether PCS acted without justification in prohibiting Mr. Edwards from working at the Aurora plant. A bad motive is thus essential to Mr. Edwards' claim, and it is generally inappropriate to grant summary judgment on issues such as "motive, intent, and other subjective feelings." *Gregorino v. Charlotte-Mecklenberg Hosp. Auth.*, 468 S.E.2d 432, 433 (N.C. Ct. App. 1996). The justification of an actor's conduct depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of

action of the actor[,] and the contractual interests of the other party." *Robinson, Bradshaw & Hinson, P.A. v. Smith*, 498 S.E.2d 841, 850 (N.C. Ct. App. 1998). Viewing the facts surrounding PCS's refusal in the light most favorable to Mr. Edwards, the issue of justification or bad motive should properly be resolved by the finder of fact, and summary judgment is inappropriate at this time.

### III. Wrongful Interference With A Prospective Contract

Like the tort of wrongful interference with a contract, wrongful interference with a prospective contract also requires proof of bad motive or intent. *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.*, 412 S.E.2d 636, 644 (N.C. 1992). Under North Carolina law, a plaintiff must show that the defendant: (1) maliciously induced a third person not to enter a contract with the plaintiff and (2) that but for the defendant's interference, a contract between the plaintiff and third party would have ensued. *Dalton v. Camp*, 548 S.E.2d 704, 709-10 (N.C. 2001). Therefore, further factual development is necessary to determine PCS's motive in disrupting any future contracts between Mr. Edwards and VIP.

In addition, a genuine issue of material fact exists as to whether Mr. Edwards would have sought future contracts with VIP in the absence of interference by PCS. PCS asserts that Mr. Edwards failed to demonstrate that there were contracts that he was in fact denied as a result of PCS's alleged interference [DE 21 at 26]. Mr. Edwards asserts that VIP "would have kept using Edwards for contracts except for the PCS incident" [DE 25 at 18]. Resolving this factual dispute is essential to the disposition of the claim, and therefore summary judgment on this claim is also inappropriate.

### IV. Blacklisting

To establish a claim for blacklisting, a plaintiff must show that: (1) defendant had been

the plaintiff's employer and had discharged the plaintiff from its service; and (2) without solicitation, the defendant by oral or written communication prevented the plaintiff from obtaining employment with another employer. *Wright v. Fiber Indus., Inc.*, 299 S.E.2d 284, (N.C. Ct. App. 1983). A genuine dispute of material fact exists as to whether Mr. Edwards was, in fact, discharged from PCS. Although PCS asserts that Mr. Edwards was merely suspended before his voluntary retirement [DE 21-3 at 21], he was placed on a no-rehire list. Without further factual development, it is unclear whether placement on this list constituted constructive discharge and could support a claim for blacklisting. *See Cortes v. McDonald's Corp.*, 955 F. Supp. 531, 539 (E.D.N.C. 1996).

## CONCLUSION

For the foregoing reasons, PCS's Motion for Summary Judgment is DENIED.

SO ORDERED, this the 5 day of September, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE